**Lois J. TYLER, Plaintiff-Appellant,**

v.

**Shafatt AHMED, M.D., and Robert M. Bolt, M.D., Defendants-Appellees.**

No. 86–3133.

United States Court of Appeals, Eleventh Circuit.

April 3, 1987.

Michael J. Dewberry, Jacksonville, Fla., for plaintiff-appellant.

James W. Smith, Daytona Beach, Fla., for Ahmed.

Taraska, Grower & Unger, Joseph M. Taraska, Orlando, Fla., for Bolt.

Before RONEY, Chief Judge, EDMONDSON, Circuit Judge, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

This case involves the principle of subrogation under Florida law. The district court held that Lois Tyler could not sue her physicians for medical malpractice because she had obtained settlements, predominately from her insurance company, which fully compensated her for the injuries she in-

curred in previous automobile accidents *and* for any alleged medical malpractice that stemmed from her physicians' treatment of those injuries. Under Florida law, Tyler's malpractice claim resided with her insurer once she elected to be compensated by that entity. As such, Tyler was not the proper party to bring suit against her physicians. Accordingly, the district court granted summary judgment in the defendants' favor. We affirm.

## I.

In 1977, Tyler was involved in two unrelated automobile accidents. As a result of one or both of the accidents she suffered a neck injury. In an effort to remedy this injury, Tyler would later undergo surgery.

Prior to her surgery in 1980, Tyler compromised her claims against the two adverse drivers involved in the 1977 accidents and their respective insurers for $60,000. Apparently, this sum failed to compensate Tyler fully for her injuries because she also made a claim against her insurer, American Fire and Casualty Company ("American Fire"), under the underinsured/uninsured motorist provision of her policy. This provision allows an insured to receive compensation from his or her own insurance company in the event that a tortfeasor lacks insurance or retains insufficient coverage. Tyler's settlement with American Fire, the linchpin of this litigation, occurred in December of 1980. She received $130,000.

In July of 1980, Tyler underwent the surgical treatment for her neck injury. Drs. Ahmed and Bolt sought to fuse the vertebrae in her neck by grafting bone from her hip. Complications, which Tyler claims were caused by malpractice, developed at the donor site. As a result, in October of 1980 Tyler was forced to undergo corrective surgery to remedy the problems in her hip.

As stated, in December of 1980, Tyler settled her claim against American Fire. It is undisputed that this settlement was intended to compensate her for all of the injuries resulting from the 1977 accidents, including any alleged medical malpractice she sustained in undergoing treatment.

Notwithstanding this settlement, Tyler filed an action for medical malpractice against her physicians in July of 1982. After extensive discovery, the trial court granted the defendants' motion for summary judgment on the basis of the Florida Court of Appeals' decision in *McCutcheon v. Hertz Corp.*, 463 So.2d 1226 (Fla.Dist.Ct. App.1985), *pet. for rev. denied*, 476 So.2d 674 (Fla.).

## II.

*McCutcheon* addressed the issue of whether a plaintiff who was fully compensated by a settlement for both the injuries incurred in an automobile accident and the alleged aggravation of those injuries by subsequent medical malpractice could thereafter sue the physician. *McCutcheon* held that a suit by a fully compensated plaintiff was improper. The cause of action against the physician shifted to the party from whom McCutcheon received her compensation under the doctrine of subrogation.

The facts of *McCutcheon* can be summarized as follows. In 1971, Mrs. McCutcheon was injured as the result of an automobile collision with a Hertz lessee. Her injuries were aggravated by the allegedly negligent treatment of her physician. McCutcheon sued Hertz and its driver for all of her injuries since Florida follows the rule that an initial tortfeasor is liable for the subsequent aggravation of an injury even if the aggravation is the result of medical malpractice. Prior to trial, Hertz attempted to join the physician in order to seek indemnity but was not allowed. On the morning of trial Hertz reached a settlement with McCutcheon. Meanwhile, McCutcheon had filed a separate suit against her physician claiming medical malpractice.

After paying McCutcheon, Hertz sued her physician in a separate action under the theory of subrogation. Hertz alleged that all or part of McCutcheon's damages were caused by the physician's malpractice. Since Hertz was liable under the law for all of McCutcheon's damages, Hertz alleged

McCutcheon's physician was liable to Hertz for that portion of the settlement that compensated McCutcheon for his malpractice. The Florida court dismissed McCutcheon's complaint against her physician because of its decision that the cause of action resided with Hertz. McCutcheon, of course, had sought and obtained full recovery from Hertz for all of her injuries. Thus, she was not entitled to seek a second recovery from her physician.

The Florida court gave two intertwined rationales for dismissing McCutcheon's complaint. The first was to avoid the inequitable result of exposing the physicians to double liability. Once to McCutcheon on her malpractice claim and a second time to Hertz on its action for subrogation. The court's other rationale concerned McCutcheon's potential windfall. Having been compensated by Hertz for her physician's alleged malpractice, any remuneration she received from her doctor would be duplicative.

In deciding that McCutcheon's malpractice claim should be dismissed, the Florida court placed special emphasis on McCutcheon's election to settle with Hertz for all of her damages. The court stressed that McCutcheon could have chosen to settle with Hertz for only the injuries directly related to the automobile accident, reserving her claim against her physician for disposition at another time. In light of her election to seek complete redress from Hertz, her claim was properly dismissed.

## III.

█ The district court found this case to be identical to the *McCutcheon* case in all relevant respects. Here, American Fire stood in the shoes of the original tortfeasor by virtue of its responsibility to Tyler under the underinsured motorist provision of her policy. As such, American Fire's role was identical to that of Hertz in the *McCutcheon* case. Second, the record shows that Tyler expressly settled with American Fire for all of her injuries, including those stemming from her physician's alleged medical malpractice. As such, any right to recovery against the physicians transferred to American Fire. Given these considerations, the district court granted summary judgment.

The heart of Tyler's challenge to the application of *McCutcheon* to her case concerns the end result she claims the application will have. Tyler argues that her physicians will be completely absolved from liability for their alleged malpractice. This is so, she states, because the statute of limitations has run for the filing of a medical malpractice action. If her claim is prohibited then no party may file suit. Tyler asserts that in *McCutcheon* the court dismissed Mrs. McCutcheon's claim while simultaneously acceding to Hertz's claim which was then pending against McCutcheon's physician. Here, Tyler asserts that American Fire has not moved against the defendants and the time limit for filing an action has passed. On this basis, Tyler seeks to distinguish her case from *McCutcheon*. Tyler further claims that the subrogation right established in *McCutcheon* belongs solely to American Fire. She argues that her physicians may not raise this right on their behalf in order to avoid liability. Accordingly, she claims that the district court erred in barring her suit.

Tyler's allegation that the application of *McCutcheon* will effectively allow her physicians to commit malpractice with impunity does not resolve this case. As the district court held, once Tyler sought and expressly received compensation from American Fire for *all* of her injuries her right to recover from her physicians was effectively transferred to her insurer.[1] The passage

---

1. By way of explanation, we stress that the crucial factor in this case was Tyler's intention to purposely compromise all of her claims rather than the fact that she received a complete recovery for all of her injuries. Whether an amount accepted in a settlement fully compensates a person for damages is irrelevant to whether that person has chosen to relinquish his or her claim. Often less than full compensation for injuries is accepted in a settlement because liability is in doubt, but any claim for further compensation for those injuries is nevertheless barred by the settlement agreement.

In this case, the district court properly held that the settlement with the insurance company included the plaintiff's claim for damages result-

of this right served as a bar to Tyler's present claim. The district court correctly noted that it is irrelevant whether or not American Fire exercises its right against the physicians.

Tyler's claim that her physicians will escape with impunity is not clear. And even assuming that this were true, this circumstance would not unequivocally support Tyler's argument. First, it is not certain which statute of limitation applies. Tyler's claim that the statute of limitations for malpractice actions applies fails to recognize the *McCutcheon* court's designation of Hertz's cause of action as one for subrogation. It is entirely possible that Florida's time limitation for bringing an action for subrogation is more appropriate in this case. Thus, it is unclear which statute applies. Furthermore, the appellees state that the record does not indicate that American Fire has not brought an action against the physicians. In support of this claim the appellees assert that numerous forums, each with different statutes of repose, exist in this diversity action in which a claim might be brought. In addition, the appellees assert that service of process need not be perfected in Florida in order to toll the statute. Therefore, a claim against the physicians could arguably be pending in Florida. Alternatively, even if we assume that the proper statute has run and American Fire is barred from bringing a claim, this does not automatically yield support for Tyler's argument. It is possible that American Fire made a conscious election not to sue Tyler's physicians. It is entirely unclear from the record as to what portion of Tyler's $130,000 settlement, if any, was for the alleged medical malpractice and what portion was for the injuries incurred in the initial automobile accidents. American Fire may have concluded it economically unfeasible to bring a malpractice claim or it might have concluded that no malpractice took place. Finally, if American Fire did wish to bring an action for

subrogation but is found to be barred by the statute, this result illustrates the harshness of statutes of limitation rather than any infirmity in the *McCutcheon* rule.

Lastly, Tyler's altruistically styled argument that her physicians will escape liability fails to recognize the court's two-fold rationale in *McCutcheon*. That case sought not only to avoid exposing the physician to double liability but also to preclude the injured party from receiving a double recovery. Here, Tyler has received a complete recovery from her insurer. As such, she may not now seek a second recovery from her physicians.

■ One other point Tyler makes in regard to the inapplicability of *McCutcheon* is worthy of note. She argues that the district court erred in its retroactive application of that case. Tyler filed her claim back in 1982 while *McCutcheon* was decided in 1985.

The district court ruled *McCutcheon* could be given retroactive application because it was not a novel or unexpected development in Florida law. We agree. As the appellees point out, the principle espoused in *McCutcheon* dates back to a line of cases originating half a century ago. *See, e.g., Feinstone v. Allison Hospital,* 106 Fla. 302, 143 So. 251 (1932). Furthermore, we note that the *McCutcheon* case began steering its course through the Florida courts in 1974. *See Stuart v. Hertz Corp.,* 302 So.2d 187 (Fla.Dist.Ct.App. 1974). Prior to its resolution in 1985, and before Tyler's 1982 filing, the Florida courts had promulgated sufficient portions of the holding in *McCutcheon* to put the appellant on notice as to that case's ultimate resolution. *See Underwriters of Lloyds v. City of Lauderdale Lakes,* 382 So.2d 702 (Fla.1980); *Hertz Corp. v. Stuart,* 422 So.2d 38 (Fla.Dist.Ct.App. 1982). The application of the rule of law espoused in *McCutcheon* should have come

ing from the alleged malpractice of the defendant physicians. Having settled that claim with the insurance company, and the company having obtained subrogation rights against the physicians as a part of that settlement, the plaintiff

no longer could assert a viable claim on her own behalf against the defendant physicians. Whether the amount received fully compensated the plaintiff for all her injuries is not a factor.

as no surprise to the appellant. Accordingly, we affirm.

AFFIRMED.