**Timothy WILLIAMS, and Lori Williams, his wife, Plaintiffs,**

v.

**ARAI HIROTAKE, LTD., and Arai Helmet (U.S.A.), Ltd., Defendants.**

**No. 89–0366–CIV.**

United States District Court, S.D. Florida.

Feb. 16, 1990.

---

Marilyn Sher, Chonin & Sher, Coral Gables, Fla., and Donald G. Grove, Keck, Mahin & Cate, Washington, D.C., for plaintiffs.

Ricardo J. Cata, Wilson, Elser, Moskowitz, Edelman & Dicker, Miami, Fla., for defendants.

## SUMMARY FINAL JUDGMENT

RYSKAMP, District Judge.

### I. INTRODUCTION

This matter is before the court on the parties' various motions: defendants' motion to compel the appearance at deposition of John Bishop, filed July 19, 1989; plaintiffs' motion for summary judgment regarding defendants' affirmative defense number 11, filed August 15, 1989; defendants' motion for summary judgment, filed September 13, 1989; plaintiffs' motion to shorten the time for document production and to enlarge the discovery period, if defendants' summary judgment is denied, filed September 15, 1989; defendants' motion for a medical examination of plaintiff Timothy Williams, filed September 20, 1989; and defendants' motion to strike plaintiffs' reply supporting their motion for summary judgment, filed September 22, 1989. The court heard argument on these motions on October 12, 1989.

For the reasons discussed below, defendants' motion for summary judgment is granted, and summary final judgment is entered in favor of defendants and against plaintiffs. All other outstanding motions are denied as moot.

### II. BACKGROUND

Timothy Williams was injured in November 1987, when a vehicle collided with the motorcycle he was operating in Dade County, Florida. Williams and his wife Lori, plaintiffs in this action, filed an action in Florida state court against the driver and the owner of the vehicle. Plaintiffs did not name as defendants the defendants in this case (hereinafter "the Arai defendants"), who manufactured the helmet that Timothy Williams was wearing when the accident occurred. Nevertheless, the state court defendants named the Arai defendants as third-party defendants and sought contribution under section 768.31 of the Florida Statutes.

The plaintiffs' complaint in state court sought damages for Timothy Williams' "bodily injury." Eventually, the state

court defendants gave plaintiffs the option of choosing an offer of settlement or an offer of judgment. Plaintiffs chose the latter, executing a satisfaction of judgment with the state court defendants and receiving a judgment of $1.5 million. The satisfaction of judgment was unqualified. It contained no language limiting the injuries for which plaintiffs were compensated or the claims that were satisfied. It did not preserve a cause of action against any other defendants. After execution of the satisfaction of judgment, the state court defendants/third-party plaintiffs voluntarily dismissed the Arai defendants with prejudice.

Thereafter, plaintiffs filed this action in state court against the Arai defendants, again seeking damages for Timothy Williams' injuries. The Arai defendants removed this action to federal court on the basis of diversity of citizenship. The Arai defendants now seek summary judgment, arguing that the plaintiffs' unqualified release of the state court defendants released them as well. Plaintiffs oppose this motion, arguing that their release was merely a *pro tanto* release of the named tortfeasors and not of any other parties allegedly responsible for plaintiffs' damages. The parties also have filed a number of other motions.

The following analysis considers only the Arai defendants' motion for summary judgment, because the court's decision makes that motion dispositive of this case.

## III. ANALYSIS

### A. Determining State Law in a Diversity Case.

The court notes at the outset that this diversity case involves seemingly contradictory Florida decisions, which fail to consider what appear to be relevant state statutory provisions. Despite the lack of clarity in Florida law, the court cannot decline to exercise its diversity jurisdiction in this matter. *Stool v. J.C. Penney Co.*, 404 F.2d 562, 563 (5th Cir.1968).[1] In addition, this

court cannot certify a question of Florida law directly to the Florida Supreme Court, although a procedure exists for such certification from the Eleventh Circuit Court of Appeals to the Florida Supreme Court. *See* Rule 9.150, Florida Rules of Appellate Procedure.

■ Under the principle of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), this court must discern how the Florida Supreme Court would decide this case if the issue were before it. *Towne Realty, Inc. v. Safeco Ins. Co. of America*, 854 F.2d 1264, 1267–69 (11th Cir.1988). Accordingly, the court begins "the somewhat difficult task" of predicting what a Florida court would do in a similar situation. *Jones v. Continental Ins. Co.*, 670 F.Supp. 937, 939 (S.D.Fla. 1987). In determining how a Florida court would rule, the court may use "all reliable resources, including decisions of intermediate state courts, policies underlying the applicable legal principles, doctrinal trends indicated by those policies, treatises, restatements, and law review articles." *Id.* at 940. Florida appellate decisions on Florida law bind the court, unless a strong showing is made that the Florida Supreme Court would decide the issue differently. *Maseda v. Honda Motor Co., Ltd.*, 861 F.2d 1248, 1257 n. 14 (11th Cir.1988).

### B. Florida Common Law.

Under Florida common law, it is clear that an initial tortfeasor is liable for all injuries the plaintiff sustains as a result of the first tort. *Stuart v. Hertz Corp.*, 351 So.2d 703, 706–07 (Fla.1977); *Rucks v. Pushman*, 541 So.2d 673, 675 and n. 1 (Fla. 5th DCA 1989) (and cases cited therein). Courts adhere to this common law rule, whether in cases of joint and several liability or independent liability. *Rucks v. Pushman*, 541 So.2d at 675. The legal issue in this case is whether a plaintiff's unqualified, general release of a first tortfeasor

1. Fifth Circuit decisions rendered before October 1, 1981, bind the Eleventh Circuit. *Bonner v. Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981).

terminates or limits the liability of other alleged tortfeasors.

■ Despite some contradictions, the weight of authority interpreting Florida law holds that a plaintiff's release of the first tortfeasor releases all other tortfeasors, unless the release expressly provides otherwise. *See, e.g., McCutcheon v. Hertz Corporation*, 463 So.2d 1226, 1228 (Fla. 4th DCA 1985), *review denied*, 476 So.2d 674 (Fla.1985) (affirming dismissal of appellant/plaintiff's complaint against doctor who allegedly aggravated her injuries, because settlement with car rental company did not reserve claim). Unless a cause of action expressly was preserved, the *McCutcheon* line of cases establishes a legal presumption that the plaintiff recovered from the initial tortfeasor for all injuries caused by those jointly or subsequently negligent and thus is barred from asserting the same cause of action against subsequent tortfeasors. *Rucks v. Pushman*, 541 So.2d 673, 676 (Fla. 5th DCA 1989), *review denied*, 549 So.2d 1014 (Fla.1989). The Eleventh Circuit has recognized the rule of *McCutcheon* as controlling when federal courts apply Florida law. *Tyler v. Ahmed*, 813 F.2d 1114, 1115–18 (11th Cir. 1987).[2]

The determinative factor in deciding the effect of a release of one tortfeasor is whether the release documents preserved the plaintiff's right to proceed against defendants not specifically sued. *Rucks v. Pushman*, 541 So.2d 673, 676 (Fla. 5th DCA 1989), *review denied*, 549 So.2d 1014 (Fla.1989); *see also Walker v. U–Haul Company, Inc.*, 300 So.2d 289, 291 (Fla. 4th DCA 1974), *cert. denied*, 314 So.2d 588 (Fla.1975) (satisfaction of judgment releases all defendants when it does not contain qualifications, restrictions or limitations). A plaintiff entering into a settlement agreement with an initial tortfeasor should carefully draft that agreement, to clarify whether the settlement includes compensation for injuries caused by subsequent negligence and whether causes of action are reserved. *Rucks*, 541 So.2d at 675.

Nothing in *McCutcheon* and its progeny limits their application to situations involving subsequent medical malpractice, as plaintiffs argue. Accordingly, plaintiffs' reliance on *Mathis v. Virgin*, 167 So.2d 897 (Fla. 3d DCA 1964), *cert. denied*, 174 So.2d 30 (Fla.1965), for the proposition that a general release only releases *pro tanto* the joint tortfeasor, is misplaced. The holding in *Mathis* appears to have been discredited by later decisions such as *McCutcheon*. Plaintiffs did not accept an offer of settlement, as did the plaintiff in *Mathis*, but an offer of judgment. *See* Fla.Stat. § 45.061 (1987) (offers of settlement); § 768.79 (1986) (offers of judgment).

Similarly, this case is distinguishable from that of *Knutson v. Life Care Retirement Communities, Inc.*, 493 So.2d 1133 (Fla. 4th DCA 1986), *review denied*, 501 So.2d 1282 (Fla.1986), on which plaintiffs rely to argue that the *McCutcheon* rule is inapplicable to the facts of this case. While *Knutson* is superficially inconsistent with *McCutcheon*, the cases can be reconciled readily.

In *Knutson*, the plaintiff sustained head injuries in an automobile accident and later suffered hip injuries when she fell at a nursing home where she was convalescing. The plaintiff eventually settled with the automobile driver and executed a release of him and his insurance carrier. Later, she filed a complaint against the nursing home, seeking damages for her hip injuries. The trial court in *Knutson* granted summary judgment for the nursing home under *McCutcheon*.

The appellate court reversed, ruling that summary judgment was inappropriate because a material question of fact existed as to whether the plaintiff's claims against the subsequent tortfeasor were included within the claims asserted against the initial tortfeasor who obtained a release. *Id.*

---

**2.** Indeed, in affirming retroactive application of *McCutcheon*, the Eleventh Circuit characterized the principle it adhered to as "not a novel or unexpected development in Florida law." *Tyler v. Ahmed*, 813 F.2d 1114, 1117 (11th Cir.1987).

The Eleventh Circuit noted that the same principle has been espoused by Florida courts for the last fifty years, citing a case on which defendants rely. *Id.* at 1117 (citing *Feinstone v. Allison Hospital*, 106 Fla. 302, 143 So. 251 (1932)).

at 1135. Accordingly, the court in *Knutson* distinguished its case from *McCutcheon*, in which the plaintiff's claim against the first tortfeasor included all of her damages, thus barring action against subsequent tortfeasors after the plaintiff accepted an offer of judgment.

■ In contrast to *Knutson* and analogous to *McCutcheon*, the facts of this case clearly show that both of plaintiffs' actions sought the same damages. Plaintiffs' first complaint sought damages for Timothy Williams' "bodily injuries" and Lori Williams' loss of consortium. Tellingly, plaintiffs' answers to interrogatories in that case described the injuries for which they were claiming damages as "[m]ultiple injuries ... including closed head trauma and multiple fractures." Plaintiffs' second complaint also sought damages for Timothy Williams' head injuries, which allegedly occurred when "[t]he helmet the Plaintiff was wearing came off and the Plaintiff's head struck the roadway ... proximately caus[ing] injuries of a severe and permanent nature...."

In addition, it is unequivocal that plaintiffs' release of the state court defendants did not include the Arai defendants. The release did not explicitly preserve a cause of action against these defendants. It did not indicate that plaintiffs' settlement with the state court defendants was for only that portion of damages for which the state court defendants were liable. This court need not conduct a lengthy, inconclusive inquiry into the attorneys' and parties' understanding of the terms of these settlement documents, in order to determine what they intended as the documents were drafted and executed.

The better approach is that of *McCutcheon* and *Rucks; i.e.,* unless a plaintiff specifically preserves a cause of action when settling with an initial tortfeasor, that settlement is legally presumed to include compensation for all damages alleged

in the complaint. This rule imposes no undue burden on plaintiffs. On the contrary, it promotes impartial judicial decisionmaking grounded in the terms of the parties' agreements. Accordingly, this court concludes that if this case were properly before the Florida Supreme Court, it would be decided under the principles of *McCutcheon* and *Rucks.*

C. *Impact of Florida Statutory Provisions.*

1. *Provisions Relating to Releases.* Plaintiffs argue that the common law rule that releases all tortfeasors on the release of one tortfeasor was abrogated with Florida's enactment of various statutory provisions. With regard to tortfeasors who are jointly and severally liable, section 46.-015(1) of the Florida Statutes provides:

> A written covenant not to sue or release of a person who is or may be jointly and severally liable with other persons for a claim shall not release or discharge any other person who may be liable for the balance of such claim.

With regard to all tortfeasors, including those who are independently liable, section 768.041(1) provides:

> A release or covenant not to sue as to one (1) tortfeasor for property damage to, personal injury of, or the wrongful death of any person shall not operate to release or discharge the liability of any other tortfeasor who may be liable for the same tort or death.

On their face, these statutory enactments appear to apply to this case. Nonetheless, Florida law has evolved independently of the statutory provisions. Florida courts do not apply, or even refer to, these provisions in deciding cases involving the release of tortfeasors, whether jointly or independently liable.[3] These courts adhere to the common law rule, whether in cases of joint and several liability or independent liability. *See, e.g., Rucks v. Pushman,* 541 So.2d at 675 (independent liability); *Walker*

---

3. Admittedly, the court in *Mathis v. Virgin* referred to the predecessor of § 768.041(1) in ruling that a joint tortfeasor is only *pro tanto* released by the release of another joint tortfeasor. *Mathis v. Virgin,* 167 So.2d 897, 899 (Fla.3d DCA 1964), *cert. denied,* 174 So.2d 30 (Fla.1965). Nevertheless, as this court has stated previously, this decision has been superseded by later decisions of the Florida courts.

v. U-Haul Company, Inc., 300 So.2d 289, 291 (Fla. 4th DCA 1974), cert. denied, 314 So.2d 588 (Fla.1975) (joint and several liability). Similarly, the Eleventh Circuit did not refer to these statutory provisions when construing Florida law in Tyler v. Ahmed, 813 F.2d 1114 (11th Cir.1987). Accordingly, this court will construe Florida law in the same manner as did the Eleventh Circuit in Tyler v. Ahmed, according to the rule of McCutcheon v. Hertz Corporation, 463 So.2d 1226, 1228 (Fla. 4th DCA 1985), pet. for rev. den., 476 So.2d 674 (Fla.1985).

■ 2. *Provisions Relating to Comparative Fault.* Plaintiffs also argue that comparative fault, as enacted in Florida in 1986, must be applied in order to prevent the Arai defendants from escaping without liability for their alleged negligence in man-

ufacturing the helmet that Timothy Williams was wearing when his accident occurred. See Fla.Stat. § 768.81.[4] Nonetheless, the court notes that none of the cases cited by the parties apply comparative fault, even though some were decided after it was enacted. See, e.g., Rucks v. Pushman, 541 So.2d 673 (Fla. 5th DCA 1989), review denied, 549 So.2d 1014 (Fla. 1989). In addition, plaintiffs cite no authority to support their argument that comparative fault applies to this case.

Comparative fault becomes an issue only when a case proceeds to trial before a jury, and the jury renders its verdict and apportions fault among the defendant tortfeasors.[5] In this case, Florida's comparative fault provisions never became operative, because the plaintiffs satisfied their

4. 768.81. Comparative fault.

(1) Definition.—As used in this section, "economic damages" means past lost income and future lost income reduced to present value; medical and funeral expenses; lost support and services; replacement value of lost personal property; loss of appraised fair market value of real property; costs of construction repairs, including labor, overhead, and profit; and any other economic loss which would not have occurred but for the injury giving rise to the cause of action.

(2) Effect of contributory fault.—In an action to which this section applies, any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as economic and noneconomic damages for an injury attributable to the claimant's contributory fault, but does not bar recovery.

(3) Apportionment of damages.—In cases to which this section applies the court shall enter judgment against each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability; provided that with respect to any party whose percentage of fault equals or exceeds that of a particular claimant, the court shall enter judgment with respect to economic damages against that party on the basis of the doctrine of joint and several liability.

(4) Applicability.—

(a) This section applies to negligence cases. For purposes of this section, "negligence cases" includes, but is not limited to, civil actions for damages based upon theories of negligence, strict liability, products liability, professional malpractice whether couched in terms of contract or tort, or breach of warranty and like theories. In determining whether a case falls within the term "negligence cases," the court

shall look to the substance of the action and not the conclusory terms used by the parties.

(b) This section does not apply to any action brought by any person to recover actual economic damages resulting from pollution, to any action based upon an intentional tort, or to any cause of action as to which application of the doctrine of joint and several liability is specifically provided by chapter 403, chapter 498, chapter 517, chapter 542, or chapter 895.

(5) Applicability of joint and several liability. —Notwithstanding the provisions of this section, the doctrine of joint and several liability applies to all actions in which the total amount of damages does not exceed $25,000.

(6) Notwithstanding anything in law to the contrary, in an action for damages for personal injury or wrongful death arising out of medical malpractice, whether in contract or tort, when an apportionment of damages pursuant to this section is attributed to a teaching hospital ..., the court shall enter judgment against the teaching hospital on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability.

Fla.Stat.Ann. § 768.81 (West Supp.1989).

5. The case of Washewich v. LeFave, 248 So.2d 670 (Fla. 4th DCA 1971), cited by plaintiffs, is not to the contrary. The court in Washewich concluded that the plaintiff bore the burden of proving to the jury, to the extent reasonably possible, what injuries were proximately caused by each of two successive accidents in which she was involved. Id. at 672. Nevertheless, the court noted that the jury then must be instructed to apportion the damages as reasonably as possible; if apportionment were impossible, the jury could be authorized to charge the defendant with all damages for the entire injury. Id. at 672–73. Clearly, in Washewich the jury retained its role in apportioning damages.

judgment and executed a release before the case ever went to trial. Accordingly, the court concludes that Florida's adoption of comparative fault does not affect the outcome of this dispute.

## IV. CONCLUSION

■ If the plaintiffs believed that the settlement they received in state court did not include the Arai defendants' portion of their damages, the settlement and release documents should have reflected that belief. Because these documents do not so indicate, plaintiffs are legally presumed to have settled with the state court defendants in satisfaction of their claims for all of Timothy Williams' bodily injuries, including the head injuries he sustained, and for Mrs. Williams' loss of consortium.

The court considers this case to be analogous to one of contractual construction and interpretation and thus appropriate for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *Orkin Exterminating Co., Inc. v. F.T.C.*, 849 F.2d 1354 (11th Cir.1988), *reh'g denied,* 859 F.2d 928, *cert. denied,* — U.S. —, 109 S.Ct. 865, 102 L.Ed.2d 989 (1989). The court concludes that plaintiffs have failed to make a showing that a genuine issue of material fact exists, such as to preclude summary judgment. Even when the facts are considered in the light most favorable to the plaintiffs, plaintiffs cannot rebut the legal presumption established by *McCutcheon* and the cases that followed it. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265, 273–74 (1986) (summary judgment appropriate when nonmoving party fails to prove essential element of case, on which it would bear burden of proof at trial).

Accordingly, after careful consideration of the law and of the record in this matter, it is hereby:

ORDERED and ADJUDGED that defendants' motion for summary judgment is GRANTED, as no question of material fact exists and defendants are entitled to judgment as a matter of law. Summary final judgment is entered in favor of defendants and against plaintiffs.

ORDERED and ADJUDGED that all other motions pending in this case are DENIED as moot.

DONE and ORDERED.