585 So.2d 987 (1991)
Gwendolyn A. RESPESS, et al., Appellants,
v.
Fairley Kave CARTER, Etc., et al., Appellees.
No. 90-1559.
District Court of Appeal of Florida, Fifth District.
August 15, 1991.
Rehearing Denied September 24, 1991.
*988 Lytal & Reiter and Larry Klein, Klein & Walsh, P.A., West Palm Beach, for appellants.
J. Brent Jones, of Hannah, Marsee, Beik & Voght, Orlando, for appellees.
PETERSON, Judge.
Gwendolyn, William, and Donald Respess, plaintiffs below, appeal a partial summary judgment allowing the defendants a setoff of $405,000 representing the amount plaintiffs received from the decedent's uninsured motorist insurance (UM) carrier. The setoff was against a negotiated settlement between the parties that set the plaintiffs' damages at $620,000. We reverse.
The Respesses are the surviving spouse and two sons of Larry Respess who died from injuries received when his vehicle was struck by an uninsured vehicle driven by James Herring. The decedent was insured under an Allstate policy the provided $500,000 in UM coverage. The survivors made a claim against the policy and settled with Allstate for $405,000. In exchange for the settlement, Allstate assigned to the Respesses all of its subrogation rights against any tortfeasors.
The Respesses then sued Jerry Punch, M.D., Coastal Communities Hospital, Herring, and Herring's alleged employers. Shortly before the accident, Punch had treated Herring, who allegedly complained of heart attack symptoms, at the Coastal Communities emergency room. The Respesses alleged in their claim against Punch and the hospital that the latter were negligent in medicating or releasing Herring. They also alleged that they were survivors of Larry and personal representatives of his estate and that they were assignees of Allstate's subrogation rights.
Punch and the hospital raised the affirmative defense that they were entitled to a $405,000 setoff for the amount paid by Allstate. The trial court entered a partial summary judgment allowing the setoff. The parties later stipulated that $620,000 was the total value of damages and the liability of Punch and the hospital. While they agreed that final judgment would be entered in the amount of $215,000, taking into account the setoff, they also agreed that the Respesses would have the right to appeal the final judgment.
The broad issue presented is whether a tortfeasor should gain the benefit of proceeds from UM coverage of an insurance policy, the premium for which was paid by the injured party. The result endorsed by the trial court allows the tortfeasors to satisfy the stipulated damages of $620,000 by payment of $215,000. On the other hand, had the court disallowed the setoff, the plaintiffs would have collected $1,025,000 even though the stipulated damages were only $620,000.
We believe that the "collateral source rule" is dispositive of this case. No exception to that rule has been cited or found independently by us that allows the appellees to obtain the benefit of Larry Respess' election to pay the additional premium for UM when obtaining his motor vehicle insurance. Simply stated, "[t]he collateral source doctrine allows an injured party to collect full damages, irrespective of coverage or payment for any element of the *989 damages by any source other than the tortfeasor." Calloway v. Dania Jai Alai Palace, Inc., 560 So.2d 808, 809 (Fla. 4th DCA), rev. denied, 576 So.2d 285 (Fla. 1990); Paradis v. Thomas, 150 So.2d 457 (Fla. 2d DCA 1963).
The appellees confuse the issue by citing Tyler v. Ahmed, 813 F.2d 1114 (11th Cir.1987), for the proposition that tradition allows a successful tort claimant to be compensated only to the extent of damages allowable by law, regardless of the amount of UM and liability coverage available. We interpret Tyler differently. Tyler holds that a plaintiff who expressly settles with a UM carrier for the full amount of damages arising out of an auto accident, including damages from subsequent medical malpractice, could not thereafter sue the second tortfeasor because, once the damages were paid, the cause of action resided with the UM carrier. The Tyler court stressed that the crucial factor in that case was not that the plaintiff had received a complete recovery; rather, the crucial factor was that the plaintiff had purposefully compromised all of her claims. Id. at 1116, n. 1. In sum, Tyler held that the plaintiff no longer had any rights flowing from the accident or subsequent medical malpractice because she had transferred those rights in toto to her carrier. Tyler could no longer assert a viable claim because the carrier had obtained all of Tyler's rights as a part of the settlement under her policy. The instant case is easily distinguishable. Here, the Respesses, in executing a release to Allstate, specifically provided that only Allstate's liability for uninsured motorist protection was being released and that any rights to pursue damages "as against any person, firm, or entity other than Allstate Insurance Company would not be adversely affected... ."
The Tyler court relied upon McCutcheon v. Hertz Corporation, 463 So.2d 1226 (Fla. 4th DCA 1985), rev. denied, 476 So.2d 674 (Fla. 1985), in which the court denied recovery to the injured person against a subsequent tortfeasor when the injured person had settled with the original tortfeasor for the full extent of her damages. The rationale was, first, to prevent the subsequent tortfeasor from exposure to double liability to both the injured person for damages and to the original tortfeasor for contribution and, second, to prevent double recovery by the injured person. The facts of McCutcheon are distinguished from the facts of the instant case where the Respesses specifically retained any claims against other tortfeasors and where there is no question of exposure of the tortfeasors to double liability.
Neither Tyler nor McCutcheon was concerned with reduction of the total receipts from all (including collateral) sources by an injured person that coincidentally reduced the damages caused by a tortfeasor. The primary concern in those decisions was to prevent a tortfeasor from exposure to more than 100 percent of the damages. In the instant case, the general rule  recognized but not followed by the trial court in order to prevent a windfall from flowing to the plaintiffs  is that a joint tortfeasor is not entitled to setoff for amounts paid by a UM carrier to the injured party. International Sales-Rentals Leasing Co. v. Nearhoof, 263 So.2d 569 (Fla. 1972). In Nearhoof, the injured parties received $19,500 from their UM carrier in settlement for their claim against one of the two tortfeasor/drivers who was uninsured. Agreeing with the UM carrier to hold in trust the proceeds from any claim arising out of the accident, the injured parties brought an action against the other driver who was insured. The UM carrier intervened in the action and moved to recover its $19,500 from the $70,500 awarded by the jury; the defendant/tortfeasor also moved for setoff of the same $19,500. The supreme court ruled that, by both agreement and by statute, the UM carrier was entitled to subrogation in the amount it had paid to the plaintiffs. The supreme court also held that the tortfeasors were not entitled to setoff because of the collateral source rule and because setoff for UM proceeds was not provided under either of sections 768.041 and 627.0851, Florida Statutes (1969).
We interpret the instant trial court's order as adopting the premise that Allstate as the UM carrier stands in the place of the *990 driver/tortfeasor and his carrier just as though it were that driver who had secured the insurance and paid the premium. This is incorrect. As we stated in Collins v. Wilcott, 578 So.2d 742 (Fla. 5th DCA 1991), issued subsequent to the trial court's ruling, a UM carrier is "neither a tortfeasor nor an insurer thereof." The trial court cited Waite v. Godfrey, 106 Cal. App.3d 760, 163 Cal. Rptr. 881 (4th Dist. 1980), in support of its premise. Waite held that a UM carrier that pays its insured on account of an at-fault uninsured driver is not a collateral source because payment is made on account of a joint tortfeasor. Such is not the law in Florida. The general principle stated by our supreme court is that the collateral source rule precludes a setoff of UM benefits. Nearhoof, at 571. We also note three significant factors that influenced the California court in Waite. First, the two individuals who were being held responsible for damages and who were requesting the setoff were the drivers (nominal tortfeasors) of the two middle vehicles in a four-car, low-speed, front-to-rear, chain reaction collision caused by the driver of the rear-most vehicle who fled the scene and was never identified. The injured person's UM coverage was paid on account of the negligence of the hit-and-run driver. Second, the parties stipulated before trial that the comparative negligence of the hit-and-run driver would not be an issue before the jury if setoff were allowed. Third, there was a possibility of double exposure to damages by the defendants because it was assumed that the subrogation rights of the UM carrier were still outstanding. The facts of the instant case make Waite inapposite and unpersuasive.
The result reached in the instant decision exemplifies the extent to which the intricacies of modern law place the courts in the discomfiting position of making a correct decision that somehow seems wrong. It may seem unfair that, by virtue of a contractual arrangement with the insurance carrier, the survivors received substantially more than their stipulated damages and that the defendants are required to pay the full amount of damages even though part of those damages had been paid. On the other hand, plaintiffs' counsel was ingenious in inducing Allstate, in return for a $95,000 discount on the face amount of the UM coverage, to surrender its subrogation rights and the opportunity to pursue and settle a claim of speculative value. There is no reason that ingenuity should accrue to the benefit of the tortfeasors. Walker v. Hilliard, 329 So.2d 44 (Fla. 1st DCA 1976). The principle behind the collateral source rule is that it is better for the wronged plaintiff to receive a potential windfall than for a tortfeasor to be relieved of responsibility for the wrong. We also doubt that the plaintiffs in this case would ever concede that they have been overpaid for the death of their husband and father.
REVERSED.
W. SHARP, J., and SAWAYA, T.D., Associate Judge, concur.