## BARNETT BANK OF SOUTH FLORIDA, Plaintiff,

v.

## FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Meritor Savings Bank, Defendant.

### No. 93–6205–CIV.

United States District Court, S.D. Florida.

March 29, 1995.

Martin B. Woods, Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., Fort Lauderdale, FL, for plaintiff.

Frank J. Sinagra, Haley, Sinagra & Perez, P.A., Fort Lauderdale, FL, Barry Richard, Greenberg Traurig Hoffman Lipoff Rosen & Quentel, P.A., Tallahassee, FL, for defendant.

## ORDER

GONZALEZ, District Judge.

THIS CAUSE has come before the Court upon Defendant's Motion to Modify or Vacate Judgment. On September 13, 1995, Magistrate Judge Linnea R. Johnson issued a Report and Recommendation on the Motion. Magistrate Judge Johnson treated the Motion as a Fed.R.Civ.P 59(e) motion, and this Court will do likewise. The Report recommended granting the motion in part and denying it in part. Both Plaintiff and Defendant have filed objections to the Report, and this Court has heard oral argument on those objections and the underlying motion.

As discussed by Magistrate Judge Johnson, this cause centers on an inter-creditor agreement. On July 14, 1986, Harold Wenal executed a promissory note secured by a mortgage encumbering a parcel of real property to Barnett Bank of South Florida, N.A. Pursuant to the terms of this mortgage, Barnett expressly prohibited the creation of junior liens or encumbrances on the Wenal Property. On August 12, 1987, Peppertree Associates Limited executed and delivered a promissory note ("Note 2") secured by a mortgage encumbering a parcel of real property to Meritor Savings Bank. On November 15, 1989, Barnett, Meritor, Wenal, and Peppertree entered into an inter-creditor agreement. Under the terms of this agreement, Peppertree received a $600,000 loan from Meritor, which was secured by a junior lien on the Wenal Property. This agreement provided that prior to making any attempt to foreclose its junior mortgage, Meritor would purchase an assignment of Barnett's mortgage on the Wenal Property.

On July 21, 1990, Meritor, without first purchasing an assignment of Barnett's note, attempted to foreclose its junior lien on the Wenal Property by filing an action in the Circuit Court for Broward County, Florida. Barnett instituted an action against Meritor in the Circuit Court of Broward County, Florida, alleging a breach of the inter-creditor agreement. On October 21, 1991, an amended order was entered granting Barnett's motion for summary judgment. In its order, which involved mixed questions of law and fact, the state trial court found that Meritor had breached its promise under the inter-creditor agreement. Further, the court found that in light of the fact that the contract contained definitive terms, and because the assignment of the mortgage would affect an interest in real property and the relationship of Barnett and its debtor, an award of money damages would be inadequate. The court therefore ordered that Meritor specifically perform its obligation under the contract by purchasing an assignment of the Barnett note on the Wenal Property.

Meritor appealed the trial court's order of summary judgment to the Florida Fourth District Court of Appeal. On December 11, 1992, while the appeal was still pending, Meritor went insolvent and was taken over by the Commonwealth of Pennsylvania who appointed the Federal Deposit Insurance Corporation ("FDIC") as Receiver of Meritor. On March 10, 1993, the FDIC removed this case to the United States District Court for the Southern District of Florida. Within ten days of removing this case, the FDIC filed the subject Rule 59(e) motion.

At the outset, the Court notes the peculiar position in which it finds itself, receiving a "case" in which a final judgment has been entered by a state court (on state law issues) and the matter pending before a state appellate court. This position is created by the broad interpretation given the removal section of the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA), 12 U.S.C. 1819(b)(2)(B). There is now overwhelming, and binding, authority holding that the FDIC can remove cases pending appeal in a state appellate court. *Jackson v. American Savings Mortgage Corp.*, 924 F.2d 195 (11th Cir.1991); *In re Meyerland Co.*, 960 F.2d 512, 520 (5th Cir.1992) (en banc); *FDIC v. Keating*, 12 F.3d 314 (1st Cir.1993). *See also Reilly v. Waukesha County Wis.*, 993 F.2d 1284 (7th Cir.1993); *In re Savers Federal Savings & Loan*, 872 F.2d 963 (11th

Cir.1989); *Resolution Trust Corp. v. Allen,* 16 F.3d 568 (4th Cir.1994); *Ward v. Resolution Trust Corp.,* 901 F.2d 694 (8th Cir.1990); *Resolution Trust Corp. v. BVS Development, Inc.,* 42 F.3d 1206 (9th Cir.1994). Hence, the Court will put aside its constitutional and jurisprudential doubts concerning such a framework, while simply noting its agreement with much of what was argued by the dissent in *In re Meyerland.*

Accepting that a case pending appeal in state court can be removed to a federal district court in this context, the question arises as to what the district court is supposed to do with it. Different circuit courts have posited different instructions for treatment of such cases, careful not to create purely appellate review by the district court. In the Eleventh Circuit, the *Jackson* court expressed great concern with prospect of becoming a "state appellate court" and, therefore, developed a scheme whereby the appellant must make a Rule 59(e) motion within ten days of removal and may appeal only after the district court has ruled on the Rule 59(e) motion. "Should the district judge refuse to modify or vacate, then the fiction that the state court judge's acts were the acts of the district judge will have been converted into reality.... It is only then that we will review the merits of that grant." *Jackson* at 199.

■ However, this Court will not allow Rule 59 and the unusual procedural posture of this case to gloss over the fact that a district court is now reviewing a state court's interpretation of its own state law. Therefore, while acknowledging the procedural fiction that prior orders in this case are now orders issued by this Court, the Court will respect the substantive reality that a state court has ruled on these precise issues of state law. To do otherwise would be to elevate federal rulemaking over the independence constitutionally guaranteed to the States. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 76–81, 58 S.Ct. 817, 822–23, 82 L.Ed.

1188 (1938). Accordingly, this Court will give "proper regard" to the state court's decision. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465–67, 87 S.Ct. 1776, 1783, 18 L.Ed.2d 886 (1967).

■ In determining the content of applicable state law, federal courts must look to the State's legislature or highest court for an articulation of that law. *Erie,* 304 U.S. at 76–79, 58 S.Ct. at 822. When there is no controlling state statute or pronouncement by that State's highest court, a federal court is directed to "determine issues of state law as it believes the highest court of the state would determine them, not necessarily ... as they have been decided by other state courts in the past." 19 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure,* § 4507 (1982).[1] However, absent compelling reason to believe that the State's highest court would overrule a lower state court's conclusions of law, state courts should be afforded deference in determining state law (or, "in predicting how the State's highest court would rule", as the operative question is phrased in a federal court). This is especially true when such quintessentially state-law issues as contract construction and the availability of specific performance are involved.

Here, in determining how much weight to afford the state trial court's decisions on the disputed issues of law *sub judice,* it should be noted that these conclusions were not only on point, but did, in fact, constitute the very same case. Further, there is no long period of interceding time between the state court's decision and this Court's review of the issues which would serve to erode the persuasive value of the state court's ruling—interceding time during which dicta, scholarly works, and policy shifts might have re-framed the issues of law. Also, "it must be recognized that a decision of a lower state court on a point of state law is generally more predictive of what

1. Some courts have described the federal court's role as "predicting what a Florida court would do in a similar situation." *Williams v. Arai Hirotake, Ltd.,* 731 F.Supp. 1557, 1559 (S.D.Fla. 1990), *citing Jones v. Continental Ins. Co.,* 670 F.Supp. 937, 939 (S.D.Fla.1987). Here, of course, we already know what a Florida court would do in this exact situation. Thus, this Court sticks to the strict charge of determining how the Florida Supreme Court would decide these issues of law, lest our analysis be over before it begins, which perhaps would be the better, albeit not prevailing, jurisprudence.

710

the state supreme court would hold than is a conflicting opinion of a federal court on the same point." *Packard v. Provident Nat. Bank,* 994 F.2d 1039, 1047 (3rd Cir.1993).

Upon review of Florida law, and all proper indicators thereof, this Court finds no authority or persuasive indicia that contravene either the state court's determination of what the law is or its application of that law to the largely undisputed facts of this case. This Court will not simply supplant the state court's reasoning and analysis with its own, absent a clear indication that the Florida Supreme Court would rule differently on the issues of law presented to the lower court.

Because this Court finds no "manifest error of law or fact" in the state court's ruling, the Rule 59(e) motion must be denied in its entirety. *E.g., FDIC v. Meyer,* 781 F.2d 1260, 1268 (7th Cir.1986) ("[Rule 59(e) motions] must clearly establish either a manifest error of law or fact or must present newly discovered evidence.")

Having reviewed the motion to modify or vacate judgment, the Magistrate Judge's Report and the objections thereto, and the record, and having heard oral argument, and being otherwise duly advised, it is hereby:

**ORDERED AND ADJUDGED** that Plaintiff's objections to the Magistrate Judge's Report and Recommendation are **SUSTAINED** and Defendant's objections are **OVERRULED.** The Report and Recommendation is hereby adopted except for those portions of the report that find error regarding the state court's grant of specific performance. Defendant's Motion to Modify or Vacate Judgment is **DENIED** in its entirety.

**DONE AND ORDERED.**