813 So.2d 1065 (2002)
TERRI VAN WINKLE, P. A., Appellant,
v.
Barbara JOHNSTON and Keith Johnston, Appellees.
No. 1D01-1324.
District Court of Appeal of Florida, First District.
April 22, 2002.
*1066 Fred M. Johnson and William D. Horgan of Fuller, Johnson & Farrell, P.A., Tallahassee, for Appellant.
Marsha L. Lyons of Lyons and Farrar, P.A., Tallahassee, for Appellees.
PER CURIAM.
Appellant Terri Van Winkle, P.A. challenges a final order denying its claim to a setoff for the uninsured motorist benefits received by the appellees, Barbara and Keith Johnston, from their insurer, American Express Assurance Company ("AMEX"). We affirm the trial court's ruling that Van Winkle is not entitled to a setoff.
In 1995, appellee Barbara Johnston was involved in an automobile accident with an underinsured motorist. Ms. Johnston retained Van Winkle to represent her as a plaintiff in a lawsuit for personal injuries arising from the automobile accident, but Van Winkle missed the statute of limitations. After retaining different counsel, appellees instituted a lawsuit against AMEX for benefits under the uninsured motorist policy. Ultimately, AMEX paid the appellees $42,500 in uninsured motorist benefits and assigned its right to seek subrogation from the tortfeasor and/or Van Winkle to the appellees.[1] Thereafter, the appellees instituted the instant action against Van Winkle for legal malpractice. The parties have stipulated that if Van Winkle is entitled to a setoff, then appellees shall take nothing by this suit, but if Van Winkle is not so entitled, the appellees shall receive a judgment for $42,500.

I.
Citing Kay v. Bricker, 485 So.2d 486 (Fla. 3d DCA 1986), Van Winkle argues that the appellees stipulated that they incurred damages of $50,500, and because they have received that amount from insurance proceeds, there should be a setoff to prevent a double recovery.
However, in Kay, the defendant was entitled to a setoff on the basis of section 768.041(2), Florida Statutes, and the case did not involve uninsured motorist coverage benefits. Because section 768.041(2) does not authorize a setoff based on uninsured motorist coverage, Kay is not applicable. See Int'l Sales-Rentals Leasing Co. v. Nearhoof, 263 So.2d 569 (Fla.1972); Respess v. Carter, 585 So.2d 987 (Fla. 5th DCA 1991).

II.
We also reject Van Winkle's argument that the setoff is required under section 768.76(1), Florida Statutes (1995). Without addressing the issue of whether a set-off *1067 under section 768.76 is appropriate in a legal malpractice action, we conclude that the record does not support considering the insurance proceeds from AMEX as a collateral source. Section 768.76(2)(a)2. defines, in pertinent part, "collateral sources" as "any payments made to the claimant" by "automobile accident insurance that provides health benefits or income disability coverage." The record does not specify whether any of the non-PIP proceeds is for health benefits or loss of earnings, therefore Van Winkle has not demonstrated entitlement to a setoff pursuant to section 768.76.
Therefore, we affirm the trial court's denial of Van Winkle's claim to a setoff on legal malpractice damages it owes to appellees.
BENTON and POLSTON, JJ., concur. ERVIN, J., concurs with opinion.
ERVIN, J., concurring.
Although I agree with the majority's decision to affirm, I am unable to join in part II of its opinion, in which it concludes that the record is insufficient to support an inference that the insurance proceeds paid to the Johnstons can be considered a collateral source for the purpose of a setoff under section 768.76(1), Florida Statutes (1995). As the majority points out, the $42,500 paid to the Johnstons were uninsured motorist (UM) benefits. The majority, however, is of the view that the record is inconclusive as to whether these benefits meet the definition of a collateral source provided in section 768.76(2)(a)(2),[1] because there is no showing that they were furnished either as health benefits or for loss of earnings.
In my judgment, once Van Winkle presented evidence that the Johnstons received UM benefits from their insurer, she satisfied the burden of establishing, as a matter of law, that such benefits were from a collateral source, and was not required to produce any additional evidence for such purpose. I nevertheless agree to affirm, because, as I later explain, the payment was from a collateral source for which AMEX had a reimbursement right that precluded any setoff under section 768.76(1).
That the UM benefits paid comply with the statutory definition of collateral source is clearly apparent from a reading of the pertinent statutes outlining the types of benefits for which UM coverage applies. Section 627.727(1), Florida Statutes (1995), for example, reflects that UM coverage is available to those entitled to recover damages because of bodily injury, sickness or disease, including death, caused by the owner or operator of an uninsured motor vehicle. Section 627.727(7) provides that the legal liability of a UM carrier does not include damages in tort for pain and suffering unless the injury is described in section 627.737(2)(a) through (d). Those subsections specify when pain and suffering can be recovered, particularly in cases involving permanent injuries and/or losses of bodily functions. Thus, in order to be entitled to UM benefits under the statutes, Mrs. Johnston had to show that she suffered bodily harm resulting from an accident with an uninsured motorist.
Moreover, AMEX was itself contractually obligated to furnish its insureds with UM benefits. The UM coverage section of the policy provides that it will "pay damages for bodily injury ... caused by an accident." The only other type of damage *1068 mentioned in the policy involving UM coverage pertains to care, loss of services or death arising out of bodily injury. Therefore, I consider it abundantly clear that the UM payment the Johnstons received was for health benefits, i.e., bodily injury, and, as such, falls within the definition of a collateral source.
Having so concluded, I would then address Van Winkle's alternative argument that she is entitled to a setoff on the theory that neither the Johnstons nor their insurer, AMEX, have any subrogation rights which would qualify as an exception to the setoff requirement under section 768.76(1),[2] because the statute of limitations in Georgia had expired as to the Johnstons' personal injury claim, thereby barring any such claim against the tortfeasor. Although AMEX's statutory subrogation rights against the Georgia tortfeasor may have lapsed once the statute of limitations expired, the insurance policy provided AMEX with a contractual right to reimbursement as follows:
In the event of a payment under this policy, we are entitled to all the rights of recovery that the person or organization to whom payment was made has against another. That person or organization must sign and deliver to us any legal papers relating to that recovery, do whatever else is necessary to help us exercise those rights and do nothing after loss to harm our rights.
When a person has been paid damages by us under this policy and also recovers from another, the amount recovered from the other shall be held by that person in trust for us and reimbursed to us to the extent of our payment.
The above language afforded a contractual right of reimbursement to AMEX in the event the Johnstons recovered damages arising from the automobile accident as part of any judgment or settlement in their legal malpractice claim against Van Winkle. AMEX assigned this right to the Johnstons after settling a bad-faith insurance claim with the Johnstons, and there has been no contention that its right to same had lapsed or expired due to any applicable statute of limitations. In my judgment, the clear language of section 768.76(1) precludes a setoff. See Bruner v. Caterpillar, Inc., 627 So.2d 46 (Fla. 1st DCA 1993) (denying collateral source offset under section 768.76(1) to workers' compensation benefits based on statutory subrogation right under the Workers' Compensation Law).
In so concluding, I would reject Van Winkle's reliance on National Union Fire Insurance Co. v. Salter, 717 So.2d 141 (Fla. 5th DCA 1998), as support for her position that a legal malpractice claim, which is a personal tort, cannot be assigned or subrogated. AMEX's insurance contract with the Johnstons created a reimbursement right, which Salter does not address. Even if AMEX's right were considered to be one of subrogation, rather than reimbursement, I would still distinguish Salter because it involves an insurer that attempted to file a legal malpractice claim against attorneys with whom it was not in privity under the theory that the insurer was subrogated to the rights of the insured whom the attorneys had represented in a real property transaction. Here, the legal malpractice action between the Johnstons and Van Winkle is proper, and the issue of subrogation is limited to the question of whether Van Winkle is entitled to offset the judgment against it *1069 with the insurance funds paid to the Johnstons.
As a final consideration, I reject Van Winkle's argument that by affirming the order, the Johnstons would receive more than their stipulated damages of $50,500, because they would not only obtain the $42,500 in UM benefits, but they would also be entitled to a $42,500 judgment against Van Winkle. In that regard, I am persuaded by Respess v. Carter, 585 So.2d 987, 990 (Fla. 5th DCA 1991), wherein that court concluded "it is better for the wronged plaintiff to receive a potential windfall than for a tortfeasor to be relieved of responsibility for the wrong."
To conclude, I would affirm, but for reasons substantially different from those advanced by the majority.
NOTES
[1] In addition to the $42,500 received from AMEX, appellees received $8,000 in personal injury protection benefits from their PIP carrier. The parties stipulated that Van Winkle is entitled to a setoff against appellees' claim for the $8,000 paid.
[1] A collateral source includes "[a]ny health, sickness, or income disability insurance; automobile accident insurance that provides health benefits or income disability coverage; and any other similar insurance benefits." (Emphasis added.)
[2] Section 768.76(1) authorizes a setoff against any award of damages for all collateral sources paid the injured party or parties, with the exception that no reduction shall be allowed "for collateral sources for which a subrogation or reimbursement right exists."