CAMPBELL, Judge.
In this negligence action arising out of an automobile/pedestrian accident, we are asked to decide whether the uninsured or underin-sured motorist (UM) carrier may “piggyback” its subrogation claim onto the timely filed underlying negligence action and, if so, whether the collateral source rule prevents collection of the claim in any event. We hold that, because of its uniquely dependent nature, the UM claim may be “piggybacked” onto the timely filed main action, and that the collateral source rule, for public policy reasons, does not bar recovery. Accordingly, we reverse.
While out for an evening walk in Lakeland on January 13, 1987, appellees Betty Jo and John Obenland were struck and injured by a truck owned by appellee Rick Strawbridge, Inc. and driven by appellee Raymond Slocum. At the time of the accident, John Obenland was covered by two UM policies, one issued by appellant Milwaukee Guardian Insurance Company and one issued by appellant Economy Fire and Casualty Company. The policies were both issued in Illinois and included subrogation clauses entitling each insurer, upon payment under the policy, to *266 be subrogated to its insureds’ right to recover from the tortfeasor to the extent of that payment.
On October 28, 1988, the Obenlands filed a negligence action against Slocum and Straw-bridge, alleging that Slocum negligently operated the vehicle and that Strawbridge was vicariously liable for Slocum’s negligence.
Strawbridge’s insurer, State Farm, indicated its willingness to tender its $100,000 per person policy limit for Betty Jo’s injuries and another $100,000 for John’s injuries. In order to preserve their subrogation rights under Illinois law[1], on December 15, 1988, Economy, on behalf of itself and Milwaukee, paid the Obenlands a total of $200,000, representing State Farm’s proffered settlement amount.
On September 23,1992, Economy and Milwaukee filed a joint motion to intervene and a complaint of intervenors, requesting subro-gation both as to the tortfeasors, Straw-bridge and Slocum, and as to the insureds, 'the Obenlands. The court ultimately denied the motion to intervene.
There are actually two issues here. The first is the right of the UM carriers, having filed their motions to intervene after the four-year statute of limitations had run on the underlying negligence action, to intervene and be subrogated to the Obenlands’ rights against the tortfeasors. The second is whether, even if the UM carriers can be subrogated to the Obenlands’ rights, the collateral source rule would prevent the Oben-lands from recovering the $200,000 paid by the UM carriers, thus rendering any subro-gation rights essentially meaningless since the UM carriers, as subrogees, stand in the shoes of their subrogors, the Obenlands.
The first issue, whether the UM carriers’ subrogation claims raised by an attempted intervention in the subrogor’s underlying action are time-barred by the statute of limitations, is a case of first impression in Florida. The case law is clear that an independent subrogation action would be time-barred when not filed within the applicable statute of limitations. See Don Reid Ford, Inc. v. Feldman, 421 So.2d 184 (Fla. 5th DCA 1982); Allstate Ins. Co. v. Metropolitan Dade County, 436 So.2d 976 (Fla. 3d DCA 1983), rev. denied, 447 So.2d 885 (Fla. 1984). We conclude that same rule does not bar the subrogation action when it is sought to be enforced by intervention in the subro-gor’s timely filed underlying action. Adhering to the principle that an insurer’s rights in a subrogation action are derivative of the rights of its insured, we therefore hold that the UM earners’ subrogation claims are not barred where the insured timely filed its action against the tortfeasor. See Don Reid Ford, 421 So.2d at 185. In reaching this conclusion, we focus particularly on the use of the term “derivative,” in the sense that the UM carriers’ action is derived from and dependent upon the claim that is the subject of the underlying action. Given the unique dependence of the subrogation action on the underlying claim, the UM carriers’ subrogation action should not be considered an independent action that must be filed within the appropriate statute of limitations for the underlying claim when an action on that claim has been timely filed by the subrogor. Since the UM action is derivative of and dependent upon the underlying claim, we conclude that it is timely if it is filed by intervention in and during the pendency of the timely filed underlying action.
This “piggybacking” of a UM insurer’s subrogated claim of this nature that arises from the Illinois statute or the similar Florida statute (see § 627.727(6), Fla.Stat. (1991)) is necessary in order to protect such a UM insurer whose insured only timely files its negligence action immediately prior to the expiration of the statute of limitations. In that scenario, any subsequent offer of settlement by the tortfeasor’s insurer (which the UM insurer is statutorily mandated to match to protect its subrogation rights) which is not made until after the statute of limitations had run would preclude the UM insurer from being able to timely file its subrogation claim. In the instant case, we conclude that since the Obenlands’ action was not barred by the statute of limitations, Economy and Milwau *267 kee should not be precluded from asserting their subrogation claims in the Obenlands’ underlying action. See Holibaugh v. Cox, 167 Ohio St. 340, 148 N.E.2d 677 (1958).[2]
Having determined that the UM carriers’ subrogation claim was timely, we now turn to the question of whether, once the UM earners are subrogated to the Obenlands’ rights, the Obenlands have any rights .subject 'to subrogation. Although the trial court held that the collateral source rule prevented the Obenlands from collecting the $200,000 payment tendered to preserve the insurers’ sub-rogation rights, UM coverage is not a collateral source.
Under Florida’s collateral source rule, contained in section 627.7372(1) Florida Statutes (1991), the total amount of benefits a claimant receives from collateral sources is to be deducted from the jury verdict, thus preventing the plaintiff from reaping a double recovery. However, the supreme court has held that uninsured motorist payments are not collateral sources to be deducted from the jury verdict. Int’l Sales-Rentals Leasing Co. v. Nearhoof, 263 So.2d 569 (Fla.1972). “The principle behind [this rule] is that it is better for the wronged plaintiff to receive a potential windfall than for a tortfeasor to be relieved of responsibility for the wrong,” particularly in the ease of UM coverage since the insured procured the insurance. Respess v. Carter, 585 So.2d 987, 990 (Fla. 5th DCA 1991).
We would extend this rule to cover those additional payments a UM insurer is statutorily mandated to make in order to protect its subrogation rights for its UM payments. The cautious insured should not be penalized for obtaining UM insurance and, by the same token, it would be unfair for the tortfeasor to benefit by the insured’s payment of the UM insurance premium or by the UM insurer’s statutorily mandated payments on behalf of the tortfeasor. As the Fifth District observed in Respess, “[t]he result reached in the instant decision exemplifies the extent to which the intricacies of modern law place the courts in the discomfiting position of making a correct decision that somehow seems wrong.” 585 So.2d at 990. As explained above, however, we conclude that the better policy analysis supports this result.
We, therefore, conclude that the collateral source rule does not bar the Obenlands from collecting the amounts paid them by their UM carriers from the tortfeasors, nor does it bar the UM carriers as subrogees of the Obenlands’ from intervening in their actions against the tortfeasors. See Blue Cross and Blue Shield of Florida, Inc. v. Matthews, 498 So.2d 421 (Fla.1986). Accordingly, we reverse and direct that the UM carriers’ joint motion to intervene be granted.
FRANK, C.J., and PATTERSON, J., concur.

. 73 Illinois Revised Statutes 755a-2(6) (1988) requires UM carriers to pay their insureds an amount equal to the tentative settlement in order to preserve their subrogation rights.

. We add parenthetically that we believe that a statutory indemnity action for paying State Farm’s settlement offer may well also exist either against Strawbridge and Slocum and/or State Farm. See Allstate Insurance Co. In such an indemnity action, any applicable statute of limitations would not commence until Economy made its payment.