PAUL G. BYRON, UNITED STATES DISTRICT JUDGE
This cause is before the Court on Defendant United Airlines, Inc.'s Motion to Preclude the Testimony of Dr. Devin Datta. (Doc. 56). Plaintiff has filed a response in opposition (Doc. 57), and the matter is now ripe for resolution. After having reviewed the pleadings and the deposition testimony of Dr. Datta (Doc. 60), the Defendant's Motion is due to be denied.
I. BACKGROUND
Plaintiff alleges that on February 26, 2017, he sustained serious injuries while attempting to board a United Airlines flight, and he sued Defendant for its alleged negligence. (Doc. 1). On June 4, 2018, the Court issued its Case Management Scheduling Order which, in pertinent part, requires Plaintiff to disclose his expert report on or before February 21, 2019, with the defense expert report to be submitted on March 21, 2019. (Doc. 15). Discovery closed on April 22, 2019. (Id. ).
Plaintiff disclosed Dr. Datta's expert report, curriculum vitae, and fee schedule *1345 on February 25, 2019 (Doc. 57-1), along with the medical records he relied upon in rendering his opinion. (Doc. 57-2). The following day counsel for United Airlines deposed Dr. Datta. (Doc. 60-1). Approximately ten weeks later, Defendant filed its Daubert Motion. (Doc. 56). The defense did not challenge the completeness of Dr. Datta's Rule 26 expert disclosure prior to taking his deposition, before the close of discovery, or in advance of their Daubert challenge.
II. DISCUSSION
A. The Daubert Challenge
United Airlines seeks to exclude Dr. Datta on the following grounds: (1) Dr. Datta failed to provide a complete statement of all opinions he would express and the basis and reasons for them, including the facts or data considered by him, and failed to disclose a list of cases where he testified as an expert; (2) Dr. Datta's opinions are speculative as to the causal connection between Plaintiff having fallen on a United Airlines airplane and his L1 compression fracture ; and (3) Dr. Datta's opinions are, therefore, not helpful to the jury. (Id. at p. 2).
In response, Plaintiff argues that the expert report is adequate, because Dr. Datta examined Plaintiff, considered medical records, including diagnostic films, and based his opinion on the objective evidence coupled with patient history concerning the injury sustained after the fall. (Doc. 57, p. 4). Plaintiff concedes that Dr. Datta did not disclose a list of cases over the past four years where he testified as an expert, explaining that Dr. Datta does not maintain a list. (Id. at p. 9). The parties agree that Dr. Datta possesses the requisite qualifications to offer a medical opinion on the issue of causation. The dispute centers on the methodology by which Dr. Datta reaches his conclusions and its reliability.
B. The Expert Report
Rule 26 imposes specific disclosure requirements upon any witness "who is retained or specially employed to provide expert testimony in the case ..." Prieto v. Malgor , 361 F.3d 1313, 1317 (11th Cir. 2004). The proffered expert must provide a written report "containing 'a complete statement of all opinions to be expressed and the basis and reasons therefor,' as well as information about the data considered, the witness' qualifications, the compensation earned, and any other recent cases in which he or she offered testimony.' " Id. at p. 1318. The failure to comply with this rule, absent "substantial justification," results in the expert being stricken "unless such failure is harmless." Id.
Whether the failure to fully comply with Rule 26 is harmless involves the consideration of five factors:
(1) the surprise to the party against whom the evidence would be offered;
(2) the ability of that party to cure the surprise;
(3) the extent to which allowing the evidence would disrupt the trial;
(4) the importance of the evidence; and
(5) the nondisclosing party's explanation for its failure to disclose the evidence.
Kondragunta v. Ace Doran Hauling & Rigging Co. , No. 1:11-cv-01094-JEC, 2013 WL 1189493, at *7 (N.D. Ga., Mar. 21, 2013). Where the opponent of the proffered expert fails to either attempt to resolve the defective expert report in good faith or fails to move for an order requiring a more detailed response under Rule 26, that party cannot be heard to complain of prejudice. Id. (quoting Griffith v. Gen. Motors Corp. , 303 F.3d 1276, 1283 (11th Cir. 2002) ); see also, Mitchell v. Ford Motor Co. , 318 F. App'x 821, 822 (11th Cir. 2009) (excluding expert testimony where the deficiently written report prevented *1346 the defendant from being able to fully depose the expert).
It is undisputed that Dr. Datta's expert report, cited in its entirety below, is brief:
Gregory Woienski DOB 05/18/1951 Narrative Request Dictated 02/21/2019
.P: PHYSICAL EXAMINATION
The patient was initially referred to our office by Dr. Jay Olsson for a lumbar spine consult. He established with Dr. Ortiz on 07/07/2015 for evaluation of low back and leg pain issues. He is identified with a degenerative disease in his lumbar spine, particularly L4-5 and L5-S1 and adjacent level stenosis that was severe at the L3-4 level. He established with me on 10/13/2015. We discussed the findings, I believe that the lower lumbar levels were autofused and the L3-4 level was the main motion segment with a stenosis and we talked about surgical options in that area, that was on 10/13/2015. He had some other underlying medical issue with an open wound that delayed him heading toward surgery. He ended up in the hospital with an acute L1 fracture, was treated with an L1 Kyphoplasty on 03/02/2017. This fracture occurred below a multilevel autofused segment from T12 and superior. He then underwent an L3-4 OLIF and posterior laminectomy fusion at L3-4 on 04/06/2017. After the surgery, he did well with significant improvement of his back and leg pain. More recently, he is having some neck issues and a CT scan of his cervical spine was reviewed, which also showed a multilevel cervical autofusion present. His current treatment involves education and risk for fracture with additional falls or injuries because of his multilevel autofusion segments throughout his spine, but also he has significant risk for adjacent level disease and he still has at T12-L1, L1-2 and L2-3 segments that remain with some motion present and those could wear out as time progresses.
As far as his injuries resulting from his recent fall on the United Airlines flight, he definitely had the subacute L1 compression fracture, which is directly attributed to the fall. He has had increased neck pain, but no fracture identified in his cervical spine, so symptomatic treatment will be the treatment for his cervical spine.
.P:
Devin K. Datta, MD/11519
(Doc. 57-3).
Plaintiff contends that Dr. Datta's opinion is fleshed out by the medical records furnished contemporaneous to his opinion. However, it is axiomatic that "the fact ... plaintiff provided all his medical records to the defendants does not mean that plaintiff fulfilled the 'summary of the facts and opinions' prong of Rule 26(a)(2)(c)." Kondragunta , at *6. This is because "[a]llowing medical records to be submitted 'in lieu of a summary would invite a party to dump voluminous medical records on the opposing party, contrary to the rule's attempt to extract a 'summary.' " Id. (citation omitted). Thus, the Court must first decide whether the Rule 26 disclosure was deficient and whether the Defendant was harmed.
1. Deficiencies were Harmless
Here United Airlines knew that Dr. Datta, one of Plaintiff's treating physicians, would testify concerning Plaintiff's injuries and causation. Defendant had ample opportunity to either consult with opposing counsel concerning perceived deficiencies in Dr. Datta's Rule 26 disclosure or to file a motion to compel a more comprehensive report or to strike the instant report.[1] United Airlines chose to do neither.
*1347 To the contrary, the day after defense counsel received Dr. Datta's report, the defense deposed Dr. Datta. The Court has carefully reviewed Dr. Datta's deposition, and the defense does not interpose any objection to proceeding or voice any complaint regarding the brevity of the expert report. Throughout the deposition, defense counsel refers to, or asks Dr. Datta to read, medical records describing treatment provided by Dr. Ortiz or by Dr. Datta. (Doc. 60-1). The defense used the medical records to question Dr. Datta diagnostic tests, Dr. Datta's observations of the L1 fracture during surgery, and Plaintiff's patient history. (Id. at 5:7-10; 6:12-15; 9:22-10:13; 13:2-6; 14:11-13; 15:9-25; 17:10-15; 18:18-23; 19:12-21; 21:9-23; 22:8-23: 126:10-16; 29:5-11; 31:14-21). The deposition was short and targeted, the hallmarks of a prepared attorney, and at the conclusion of the deposition, counsel for the defense did not request an opportunity to re-depose Dr. Datta due to any prejudice caused by the brevity of the expert report.[2] In fact, Dr. Datta was asked six questions, and they involved who asked him to prepare the report, when he dictated the report, and how much he was paid. (Doc. 60-1, 35:1-36:2).
In short, Defendant was not surprised by Dr. Datta's opinions, clearly understood the methodology employed by Dr. Datta in arriving at his causation opinions and had ample opportunity to complain about the quality of his expert report if necessary. Rather than attempt to cure the deficiencies in Dr. Datta's report, Defendant expeditiously set and took Dr. Datta's deposition and now raised noncompliance with Rule 26 as a basis for excluding his testimony. Clearly, the expert opinions offered by Dr. Datta are important, and in the absence of those opinions, Plaintiff is unlikely to carry his burden of establishing causation. Finally, the trial has not been scheduled, and still the defense has not sought leave to reopen expert discovery. Based upon these findings, the Court concludes the deficiencies in Dr. Datta's Rule 26 are harmless.[3]
2. Daubert Analysis
The Federal Rules of Evidence allow a witness who is qualified as an expert because of his "knowledge, skill, expertise, training, or education" to offer opinion testimony where certain requirements are satisfied. Fed. R. Evid. 702. Under Rule 702 and the United States Supreme Court's ruling in Daubert v. Merrell Dow Pharmaceuticals, Inc. , 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), district courts act as "gatekeepers" to "ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.' " Rink v. Cheminova, Inc. , 400 F.3d 1286, 1291 (11th Cir. 2005), cert. denied 546 U.S. 935, 126 S.Ct. 419, 163 L.Ed.2d 320 (2005) (internal quotation marks omitted). To do this, district courts must engage in a rigorous three-part inquiry, which requires the *1348 court to ask whether: "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable ...; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." Id. at 1291-92 (internal quotation marks omitted).[4]
"Of particular relevance to an expert proffered for his experience, the court notes that neither Daubert nor its progeny preclude experience-based testimony ...." Butler v. First Acceptance Ins. Co., Inc. , 652 F. Supp. 2d 1264, 1272 (N.D. Ga. Aug. 17, 2009) (quoting Kumho Tire Co. v. Carmichael , 526 U.S. 137, 151, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) ). Additionally, an expert is permitted to form conclusions by extrapolating from existing data. Id. (quoting Gen. Elec. Co. v. Joiner , 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) ). However, "[a]n expert's opinion becomes inadmissible ... where it is connected to existing data only by the ipse dixit of the expert." Id. at 1271-72 (quoting Joiner , 522 U.S. at 146, 118 S.Ct. 512 ); see also Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty. , 402 F.3d 1092, 1113 (11th Cir. 2005). When an expert relies primarily on experience, "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Id. at 1272 (quoting United States v. Frazier , 387 F.3d 1244, 1261 (11th Cir. 2004) ). This is because "[a]n expert's qualification and experience alone are not sufficient to render his opinions reliable," and expert testimony that is nothing more than what lawyers can argue in closing does not help the trier of fact. Id.
In determining the admissibility of expert evidence, "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." Rosenfeld v. Oceania Cruises, Inc. , 654 F.3d 1190, 1193 (11th Cir. 2011) (internal quotation marks omitted). Indeed, cross-examination, contrary evidence, and instruction on the burden of proof are the proper tools for challenging questionable expert evidence. Id. It is ultimately the burden of the party who offers the expert to show that his opinion is admissible, and the party must do so by a preponderance of the evidence.[5] Rink , 400 F.3d at 1292. Accordingly, the district court must analyze the expert's credentials "in light of the subject matter" and "consider whether [the] expert is qualified to testify competently regarding the matters he intends to address."
*1349 Galarza v. Carnival Corp. , No. 15-24380-CIV, 2016 WL 7507883, *6 (S.D. Fla. Aug. 8, 2016) (citations omitted). This is not a stringent standard, and "so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to the credibility and weight, not admissibility." Id.
a. Reliability of Methodology
Dr. Datta's injury and causation opinions are based upon his education, training, and experience and his analysis of Plaintiff's medical records documenting "degenerative disease in his lumbar spine, particularly L4-5 and L5-S1 and adjacent level stenosis that was severe at the L3-4 level." (Doc. 57-3, Attachment A). These pre-existing medical issues resulted in a "multilevel autofused segment from T12 and superior." (Id. ). The medical records instruct that Plaintiff had these degenerative issues as far back as July 7, 2015. (Id. ). The injury giving rise to this lawsuit is different. Dr. Datta documents a "subacute L1 compression fracture" which he opined is "directly attributed to the fall." (Id. ). Dr. Datta testified that on March 2, 2017, "[Plaintiff] was admitted to the hospital with acute compression fracture at L1." (60-1, 13:2-6). The L1 injury is not a product of degenerative disk disease. The MRI and CAT scan both confirm the L1 injury is an "acute [compression] fracture" which means "[i]t's a fracture that happened with a recent period of time." (Id. at 20:3-14).
Dr. Datta performed a kyphoplasty procedure, which he described:
You make a small nick in the skin. You drill into the broken bond. You apply a balloon at the center of the bone to try to elevate the fracture and create a space and fill the space with cement. The cement fills the crack in the bone and provides stability to the fracture and also helps increase the height and usually takes away the patient's pain right away.
(Id. at 21:9-19). Thus, Dr. Datta confirmed what the MRI and CAT scan showed: Plaintiff sustained an acute compression fracture consistent with his recent fall and complaints of pain. Dr. Datta further explains the causal link between the acute compression fracture at L1 and Plaintiff's fall on February 26, 2017, by noting that Plaintiff was seen by Dr. Casey on March 24, 2017, and was in surgery within two weeks. (Id. at 26:10-16). Dr. Datta observed that "[i]t's very rare to have somebody on the schedule that quick after being seen in the office." (Id. ).
The Court finds the methodology supporting Dr. Datta's expert opinion as stated in his report and in deposition to be reliable. Dr. Datta is a well-qualified and very experienced orthopedic surgeon. (Doc. 57-3, Attachment B). His injury and causation opinions are based upon his physical examination of Plaintiff, objective diagnostic testing, personal observations during surgery, and corroborating patient history. Brown v. Best Foods, Div. of CPC Int'l, Inc. , 169 F.R.D. 385, 387 (N.D. Ala. 1996) (citing Matlin v. Langkow , 65 F. App'x 373, 384 (3d Cir. 2003). "Experts are permitted to draw conclusions from a set of observations that are based on their extensive and specialized experience." Jones v. Novartis Pharm. Corp. , 235 F. Supp. 3d 1244, 1256 (N.D. Ala., Jan. 26, 2017) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137, 156, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) ).
Dr. Datta has extensive and specialized experience and is qualified to discern an acute compression fracture from pre-existing degenerative disk disease. He is also qualified to opine that an acute compression fracture occurred close in time to the patient's admission and may rely upon patient history concerning the fall-a fact which is not in dispute-to reach a causal *1350 connection between the fall and the fracture. While the defense argues Dr. Datta fails to consider alternative theories for the acute compression fracture, he has in fact ruled out degenerative disk disease. There is no other intervening physical event, such as a car accident or a different fall, that may account for the acute-that is, recent-compression fracture other than Plaintiff's fall on the United Airlines flight, and the defense does not proffer an alternative causal event. An expert need not rule out non-existent alternative hypothesis in reaching his or her opinion.
3. Helpfulness to the Jury
Defendant contends that because Dr. Datta's methodology is speculative, his opinions are not helpful to the jury. (Doc. 56, p. 12). The Court disagrees with the premise of this argument and finds Dr. Datta's expert testimony helpful to the jury. A lay jury cannot be expected to understand the difference between degenerative disk disease and an acute compression fracture. Nor can they be expected to make sense of how patient history of acute pain following Plaintiff's fall on the United Airlines flight corroborates the MRI and CAT scan in narrowing the temporal connection between the fall, the reported acute pain, and the compression fracture at L1. This is uniquely an area suitable for expert testimony.
III. CONCLUSION
While Dr. Datta's expert report, having laid a basis foundation, fails to properly illuminate the methodology employed for his injury and causation opinions, Defendant United Airlines elected not to object to the completeness of the report and proceeded the next day with the expert deposition. Defendant was not prejudiced by the brevity of Dr. Datta's report, because they were in possession of the medical records supporting his opinions and were competent to challenge those expert's opinions. The lack of prejudice is further evident in the timing of the expert deposition and the failure to raise defects in the report during deposition. A party may not hold an objection to an expert's Rule 26 disclosure like an Ace during a card game and only play the card when a tactical opportunity presents. Rule 26 is designed to prevent surprise and prejudice and not to serve as a technical barrier to otherwise proper expert testimony.
The Court finds Dr. Datta to possess the requisite skills and experience to offer an expert opinion in the field of orthopedics, and his methodology is properly supported by his physical examination of the Plaintiff, objective diagnostic tests, and his specialized knowledge that an acute compression fracture is a recent event. The undisputed fall on February 26, 2017, is competently linked to the recent compression fracture. The defense can explore any weaknesses in Dr. Datta's testimony via the time-tested crucible of cross-examination.
For the foregoing reasons, Defendant's Motion to Exclude the Testimony of Dr. Datta (Doc. 56) is DENIED .
DONE AND ORDERED in Orlando, Florida on May 31, 2019.

The deadline for disclosure of Defendant's expert was March 25, 2019 (Doc. 37), and discovery did not close until April 22, 2019. (Doc. 15). Nothing prevented Defendant from compelling a more comprehensive expert report from Plaintiff.

While the defense cites to Dr. Datta's failure to list his past litigation as a cause for striking his testimony, defense counsel never questioned Dr. Datta about his prior expert testimony during the deposition. This is a red herring.

Defendant is correct that Dr. Datta failed in his expert report to elaborate upon how the medical records, surgical observations, and patient history support his causation opinion. Had Defendant objected, the Court would have required Plaintiff to submit a more comprehensive report or, assuming the delay in producing a more complete report prejudiced the defense, would have struck this expert. Defendant did not object, and Dr. Datta's methodology was explained during deposition.

The reliability of an expert's methodology is examined by considering several factors, such as (1) whether the expert bases his opinion on appropriate facts or data, (2) the degree to which the expert's methodology is accepted within his profession, (3) whether the expert's methodology can be tested or verified, (4) whether standards exist which govern the expert's methodology and, if so, whether the expert adhered to those standards, (5) whether the expert considers or accounts for alternative or contradictory information, and (6) whether the expert exercises the same degree of care in applying the methodology that an expert in the field would exercise when conducting professional work outside the context of paid litigation. See Daubert , 509 U.S. at 593-94, 113 S.Ct. 2786 (1993) ; Fed. R. Evid. 702 Advisory Committee's Note to 2000 Amendments.

The parties have not requested an evidentiary hearing, and the Court does not consider a hearing necessary to resolve the pending motion. Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty. , 402 F.3d 1092, 1113 (11th Cir. 2005) (Daubert hearing not required where the case is not complex and does not involve multiple expert witnesses).